Filed 3/14/16  Hanson v. Collins Electrical Co. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT JAMES HANSON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>COLLINS ELECTRICAL COMPANY,<br><br>        Defendant and Respondent. | A141878<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-10-275624) |

There is no dispute defendant Collins Electrical Company (Collins) exposed plaintiff Robert Hanson (Hanson) to asbestos, Hanson now has asbestos-related pleural plaquing in his lungs, and this plaquing does not impair Hanson's lung function.  Without actual impairment, argues Collins, Hanson has no negligence claim.  Hanson argues otherwise; the asbestos exposure, claims Hanson, was tortious conduct that now requires him to incur medical monitoring costs and places him in fear of developing asbestos-related cancer.  The trial court agreed with Collins and granted summary judgment.

However, in *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965 (*Potter*), the California Supreme Court held medical monitoring costs are recoverable damages, even in the absence of current physical impairment, and the trial court erred as a matter of law in ruling otherwise.  We also conclude Hanson submitted enough evidence to raise a triable issue as to whether he, in fact, has a compensable medical monitoring claim.  Given this conclusion we need not, and do not, address Hanson's fear of cancer claim,

since summary judgment is aimed at a cause of action, i.e., negligence, and not a specific theory or claimed item of damage embraced by a cause of action.

## BACKGROUND

Hanson filed a complaint in 2010 alleging numerous entities, including Doe defendants, exposed him to asbestos. According to the complaint, "exposure to asbestos and asbestos-containing products caused severe and permanent injury to [Hanson], including, but not limited to breathing difficulties and/or other lung damage." Hanson specifically alleged he suffered from asbestosis.

Several years later, in early 2012, Hanson substituted Collins for one of the Does.

The following year, in April 2013, Collins moved for summary judgment based on evidence Hanson did not have asbestosis and was not suffering impairment from any alleged occupational asbestos exposure. Collins argued Hanson had "no evidence his alleged asbestos-related injury exists" and thus no evidence asbestos caused any injury.

In support of its motion, Collins submitted various medical records and reports. A CT scan from the summer of 2009 showed Hanson had small nodules in his lung and "[p]leural plaquing secondary to asbestos exposure." There was no evidence, however, of asbestosis. Still, Hanson's doctor from the Oregon Lung Specialists wanted a follow-up CT scan to confirm his belief that the nodules were stable and reflective of "old changes." During a May 2010 follow-up visit with the specialty group, Hanson's doctor wrote Hanson: "has had extensive work-up for possible asbestosis. He has asbestos-related pleural plaquing but no evidence of clear asbestosis. He has had a few small nodules on his CT scan, about 4-5 mm in size, and he has had some lesions in his liver. . . . His largest nodule is about 5.2 mm. I do not believe this needs to be followed on a regular basis."

Collins also submitted reports by Hanson's own litigation expert, Dr. Daniel Raybin. Raybin agreed with the Oregon Lung Specialists' diagnosis of asbestos-related pleural disease. Although "definite," the plaquing was causing Hanson no impairment.

2

Very extensive plaquing might have restricted lung function. But any breathing difficulty or shortness of breath Hanson was experiencing were due to COPD or asthma, and according to Dr. Raybin, these conditions were unrelated to, and not caused by, asbestos exposure. In a March 2010 report, Raybin recommended: "a repeat chest CT scan in November 2010 and if there is no change, a follow-up chest CT scan in November 2011. If the nodules are stable after 2 years, he should have annual chest x-rays—because of his increased cancer risk due to his asbestos exposure (lung cancer and mesothelioma). [¶] Because of his history of asbestos exposure and risk for asbestosis, he should have pulmonary function tests every 2 years, or sooner if his symptoms of dyspnea worsen." In a May 2011 report, Dr. Raybin reviewed a new, March 2011 CT scan and reported it showed the plaquing observed in 2009 was unchanged.

While Collins's summary judgment motion was pending, the trial court granted Hanson leave to file a first amended complaint. The amended complaint clarified that his claims against Collins were limited to negligence and premises liability, a subspecies of negligence. It also deleted references to asbestosis and alleged Hanson suffered from "asbestos-related pleural disease." It additionally provided a more expansive description of Hanson's alleged injuries, alleging he: (1) "suffered, and continues to suffer, permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto;" and (2) "incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays, and other medical treatment."

Five days after Hanson filed his first amended complaint, he filed opposition to Collins's motion for summary judgment. He characterized Collins as asking for summary judgment "based upon the sole premise that plaintiff does not have asbestosis." Hanson conceded there was no evidence of asbestosis or lung impairment. But this did

3

not matter, he claimed, because the *first amended complaint* alleged, and Collins's own evidence showed, Hanson suffered from asbestos-related pleural disease.

In reply, Collins argued Hanson's allegations of pleural disease were "new" and the evidence regarding lack of asbestosis remained undisputed. It asked the trial court to at least grant summary adjudication as to that particular injury—in essence, asking the court to reject one of Hanson's theories of recovery or claimed items of damage embraced by his causes of action. Alternatively, Collins sought leave to conduct additional discovery and file a new summary judgment motion addressing the pleural disease. Notably, Collins did not argue that pleural disease could support Hanson's claims only if it caused physical impairment.

The impairment question, however, intrigued the trial court, so the court sought supplemental briefing on whether pleural plaquing constituted a compensable injury absent physical impairment. Hanson argued yes, stating a plaintiff can recover for "[f]ear of cancer" and "medical monitoring" regardless of impairment. Collins responded "[a] plaintiff without physical impairment resulting from his alleged asbestos exposure has not suffered an injury under California law and therefore has no cognizable claim."

The trial court subsequently granted Collins's motion for summary judgment, concluding Hanson, having suffered no asbestos-related impairment, had no injury and, thus, no claim.

## DISCUSSION

"We review the trial court's summary judgment determinations de novo." (*Henson v. C. Overaa & Co.* (2015) 238 Cal.App.4th 184, 192 (*Henson*).) "Summary judgment must be granted if all the papers and affidavits submitted, together with 'all inferences reasonably deducible from the evidence' and uncontradicted by other inferences or evidence, show 'there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) Where, as here, the defendant is the moving party, he or she may meet the

4

burden of showing a cause of action has no merit by proving one or more elements of the cause of action cannot be established. (*Id.*, subd. (o).) . . . Once the defendant has met that burden, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as to that cause of action." (*Henson*, *supra*, at p. 192.)

### The Pleadings

Collins's first line of defense of the summary judgment is that Hanson never pled "fear of cancer" or "medical monitoring" claims and therefore cannot rely on *Potter*, which recognized, inter alia, that a plaintiff who has been exposed to a toxic substance can, upon a sufficient showing, recover such damages. Collins insists Hanson only pled claims related to asbestosis, and neither the allegations of his original complaint nor his first amended complaint include fear of cancer and medical monitoring claims.

This is too narrow a view of Hanson's allegations. True, his original complaint alleged he suffered from asbestosis and generally sought damages, and the parties appear to have viewed the original complaint as pertaining only to that disease. However, the allegations of the complaint actually were broader, asserting "exposure to asbestos and asbestos-containing products caused severe and permanent injury to [Hanson], including, but not limited to breathing difficulties and/or other lung damage."

After discovery established Hanson did not in fact suffer from asbestosis, but instead had plural plaquing, he sought and was granted leaved to file a first amended complaint. His amended pleading dropped references to asbestosis and alleged Hanson suffered from "asbestos-related pleural disease." It additionally alleged he: (1) "suffered, and continues to suffer, permanent injuries and/or future increased risk of injuries to his person, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto;" and (2) "incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays, and other medical treatment."

5

These allegations adequately embrace damages claims for fear of cancer and for medical monitoring.

While Collins seems to suggest fear of cancer and medical monitoring claims must be separately labeled and pled, it cites no authority in support of any such pleading requirement. Nor are we aware of any. Indeed, these are not separate causes of action, but species of damages recoverable in connection with a negligence claim. (See *Potter, supra,* 6 Cal.4th at pp. 973, 997, 1009.)

Collins also seems to suggest we must look only at Hanson's original complaint, which alleged only asbestosis. This is manifestly incorrect. In fact, once Hanson filed his first amended complaint, Collins's summary judgment motion was rendered moot, and never should have been ruled on. "Because there is but one complaint in a civil action [citation], the filing of an amended complaint moots a motion directed to a prior complaint." (*State Compensation Ins. Fund v. Superior Court* (2010) 184 Cal.App.4th 1124, 1127, 1131 [reversing summary judgment on fraud claim when amended complaint expanded fraud allegations in way that addressed arguments raised in pending summary judgment motion].)

" '[A] court granting plaintiff leave to amend a cause of action should not at the same time attempt to summarily adjudicate material issues which underlie that same cause of action. After a cause of action is amended, the court may rule in favor of the defendant if, *upon subsequent motion, or perhaps renewal of the earlier motion if appropriately framed*, it is shown . . . there are no triable material issues of fact which would permit recovery on that theory.' " (*State Compensation Ins. Fund v. Superior Court, supra*, 184 Cal.App.4th at p. 1131.) Once an amended pleading has been filed, it is proper to rule on a pending motion for summary judgment only if the allegations in the amended complaint do not "change[] the scope of the issues for purposes of summary judgment." (*Id.* at pp. 1133–1134.)

Hanson's first amended complaint both changed the nature of his claims (from asbestosis to "asbestos-related pleural disease") and elaborated on his alleged damages, including for future risk of "cancer" and "emotional distress attendant thereto," and future costs for "X-rays, and other medical treatment." Thus, the amended pleading changed the scope of the issues for purposes of summary judgment, and, in fact, Collins complained to the trial court that Hanson's pleural plaque claims were "new." Accordingly, Collins' motion for summary judgment should have been denied as moot, and the trial court should have granted Collin's request to "file a new motion for summary judgment and/or summary adjudication based on the[] newly alleged facts."

However, as we shall explain, given the record in this case and the arguments Collins has advanced on appeal, we see no need to remand for further proceedings on summary judgment.

### There Is a Triable Issue As to Medical Monitoring

The crux of Collins Electrical's argument, both in its supplemental briefing in the trial court and in its briefing on appeal, is that there must be physical "impairment" from pleural plaquing to recover medical monitoring damages. Because there is no evidence Hanson suffers from any asbestos-related physical impairment—i.e., his pleural plaquing has not affected his breathing capacity—Collins maintains Hanson cannot establish an essential element of a negligence claim, namely damages.

However, the Supreme Court held otherwise in *Potter*. In that case, the court asked "whether and under what circumstances a toxic exposure plaintiff may recover medical monitoring damages in a negligence action." It concluded a plaintiff may recover for all detriment, not just physical harm, and that "recovery of medical monitoring damages is not contingent upon a showing of a present physical injury or upon proof that injury is reasonably certain to occur in the future." (*Potter, supra*, 6 Cal.4th at pp. 1005–1006.) " '[A]n individual has an interest in avoiding expensive diagnostic examinations just as he or she has an interest in avoiding physical injury.

7

When a defendant negligently invades this interest, the injury to which is neither speculative nor resistant to proof, it is elementary that the defendant should make the plaintiff whole by paying for the examinations.' " (*Id.* at p. 1007.) "Recognition that a defendant's conduct has created the need for future medical monitoring does not create a new tort. It is simply a compensable item of damage when liability is established under traditional tort theories of recovery." (*Ibid.*; *Miranda v. Shell Oil Co.* (1993) 17 Cal.App.4th 1651, 1658 (*Miranda*) [*Potter's* companion case and republished at the direction of the Supreme Court].)

*Potter* allows recovery of medical monitoring costs "where the proofs demonstrate, through reliable medical expert testimony, that the need for future monitoring is a reasonably certain consequence of a plaintiff's toxic exposure and that the recommended monitoring is reasonable." In determining the reasonableness and necessity of monitoring, "the following factors are relevant: (1) the significance and extent of the plaintiff's exposure to chemicals; (2) the toxicity of the chemicals; (3) the relative increase in the chance of onset of disease in the exposed plaintiff as a result of the exposure, when compared to (a) the plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of the members of the public at large of developing the disease; (4) the seriousness of the disease for which the plaintiff is at risk; and (5) the clinical value of early detection and diagnosis." (*Potter*, *supra*, 6 Cal.4th at p. 1009.) It is "for the trier of fact to decide, on the basis of competent medical testimony, whether and to what extent the particular plaintiff's exposure to toxic chemicals in a given situation justifies future periodic medical monitoring." (*Ibid.*)

Thus, there is no basis for Collins's assertion that absent evidence of current physical impairment, Hanson's pleural plaquing provides no basis for recovery of medical monitoring costs. Rather, the issue is whether the evidence raises a triable issue that Hanson's exposure to toxic chemicals "justifies future periodic medical monitoring" in light of the factors identified in *Potter*.

8

Dr. Raybin's reports raise a triable issue in this regard. In his March 2010 report, Raybin recommended that Hanson have "a repeat chest CT scan in November 2010 and if there is no change, a follow-up chest CT scan in November 2011. If the nodules are stable after 2 years, he should have annual chest x-rays—because of his increased cancer risk due to his asbestos exposure (lung cancer and mesothelioma). [¶] Because of his history of asbestos exposure and risk for asbestosis, he should have pulmonary function tests every 2 years, or sooner if his symptoms of dyspnea worsen." That a physician at Oregon Lung Specialists had a different opinion as to Hanson's lung nodules and wrote that condition did not need "to be followed on regular basis," at best gives rise to a difference of medical opinion; it does not conclusively establish that Hanson's plural plaquing does not reasonably carry with it a need for medical monitoring.

At oral argument, Collins maintained *Duarte v. Zachariah* (1994) 22 Cal.App.4th 1652 (*Duarte*), effectively limited *Potter* and made clear pleural plaquing, without more, does not constitute "injury," without which a negligence claim cannot survive. To begin with, *Duarte* is a Court of Appeal opinion and does not trump the Supreme Court's opinion in *Potter*. Furthermore, the issue in *Duarte* was whether the plaintiffs could proceed on a claim for damages to Nancy Duarte's bone marrow (allegedly caused by over-prescription of a chemotherapy drug) absent evidence the damage was a cause in fact of a recurrence of cancer. The court of appeal held the Duartes could proceed, given that Nancy's bone marrow had, in fact, been damaged, i.e., there was "an appreciable *functional* impairment of the immune system." (*Duarte*, at p. 1663.) They could therefore recover compensable damages, including emotional distress damages. (*Id.* at pp. 1663–1665.)

The Court of Appeal noted that *Potter* had "raised but had no occasion to resolve a related question." (*Duarte, supra*, 22 Cal.App.4th at p. 1661.) In *Potter*, the plaintiffs claimed an "enhanced but unquantifiable risk of developing cancer from damage to their immune systems caused by the exposure." Since the trial court in *Potter* had "failed to

9

find that 'plaintiff's exposure to the contaminated well water resulted in physical injury' the [Supreme Court] said that 'we lack an appropriate factual record for resolving whether impairment to the immune response system or cellular damage constitutes a physical injury for which parasitic damages for emotional distress ought to be available.' " (*Duarte*, at pp. 1660–1661.)

Still, the *Duarte* court found the Supreme Court's discussion of when emotional distress damages can be recovered as parasitic damages—in other words, the high court's fear of cancer discussion— helpful to analyzing the damage-to-bone-marrow claim before it. (*Duarte, supra*, 22 Cal.App.4th at pp. 1661–1662.) The Court of Appeal observed that the "line of asbestos cases cited in *Potter* as suggesting that damage to the immune system might not constitute physical injury sufficient for the award of fear of future cancer damages," included cases where "the bodily changes are described as 'Pleural plaques, pleural thickening and the ingestion of asbestos fibers [constituting] a "technical invasion of the integrity of the plaintiff's person by . . . *harmless*, but offensive, contact . . . .' " (*Id.* at p. 1662.) Not only were these identified cases from other jurisdictions, but *Duarte* did not cite them in connection with medical monitoring.

In short, the issue in *Duarte* differed from both the fear of cancer claim and the medical monitoring claim in *Potter*. And to the extent *Duarte* took counsel from *Potter*, it was from the high court's fear of cancer analysis, *not* its medical monitoring analysis.

As Collins properly acknowledged at oral argument, the Supreme Court set forth different standards for the viability of these claims. (*Potter, supra*, 6 Cal.4th at pp. 985–988, 991–994, 997, 1004–1010.) "[I]n the absence of a present physical injury or illness, damages for fear of cancer may be recovered only if the plaintiff pleads and proves that (1) as a result of the defendant's negligent breach of a duty owed to the plaintiff, the plaintiff is exposed to a toxic substance which threatens cancer; *and* (2) the plaintiff's fear stems from a knowledge, corroborated by reliable medical or scientific opinion, that

10

it is more likely than not that the plaintiff will develop the cancer in the future due to the toxic exposure." (*Id.* at p. 997.)

As for medical monitoring damages, these too, may be recoverable "as a result of a defendant's tortious conduct, even in the absence of actual physical injury." (*Potter, supra*, 6 Cal.4th at p. 1007.) Yet recovery of medical monitoring damages does not even depend on a showing that a particular cancer or disease is "reasonably certain" to occur in the future, but on a showing that medical monitoring is needed given the exposure. (*Id.* at pp. 1006–1008.) That is because there is "an important public health interest in fostering access to medical testing for individuals whose exposure to toxic chemicals creates an enhanced *risk* of disease, particularly in light of the value of early diagnosis and treatment for many cancer patients" and a " 'substantial remedy *before* the consequences of the plaintiffs' exposure are manifest may also have the beneficial effect of *preventing* or mitigating serious *future illnesses* and thus reduce the overall costs to responsible parties.' " (*Id.* at p. 1008, italics added.)

Thus, it could not be more clear that a plaintiff exposed to a toxic substance need not wait until he or she suffers actual "impairment" before seeking damages for medical monitoring, provided he or she can "demonstrate, through reliable medical expert testimony, that the need for future monitoring is a reasonably certain consequence of" the exposure "and that the recommended monitoring is reasonable." (*Potter, supra*, 6 Cal.4th at p. 1009.) In short, the pivotal "damage" sustained by such a plaintiff is the "reasonably certain need for medical monitoring." (*Id.* at pp. 1006–1007; see also *Gutierrez v. Cassiar Mining Corp.* (1998) 64 Cal.App.4th 148, 157–158 [jury instructions on medical monitoring were appropriate given the plaintiff's asbestos exposure and signs of pleural plaquing].)

Collins also points to out-of-state cases that have rejected recovery of medical monitoring costs absent impairment. However, *Potter* was aware of this differing view and, as discussed above, explicitly rejected it. (*Potter*, *supra*, 6 Cal.4th at p. 1005.) The

11

court also reaffirmed *Potter* seven years later in *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, and other state courts have agreed with *Potter*'s approach (see, e.g., *Simmons v. Pacor, Inc.* (1996) 543 Pa. 664, 678–680; *Petito v. A.H. Robins Co., Inc.* (Fla. Dist. Ct. App. 1999) 750 So.2d 103, 105). Thus, even if arguments can be made against *Potter* (see, e.g., James A. Henderson, Jr. & Aaron D. Twerski, *Asbestos Litigation Gone Mad: Exposure-Based Recovery for Increased Risk, Mental Distress, and Medical Monitoring* (2002) 53 S.C. L. Rev. 815), it remains binding law in California (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Because we conclude Hanson's medical monitoring claim has sufficient traction to raise a triable issue, we need not and do not address his fear of cancer claim. (See *Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 939 [declining to reach legal theories that do not affect summary judgment reversal]; *DuBeck v. California Physicians' Service* (2015) 234 Cal.App.4th 1254, 1268, fn. 13. [same]; see also *Miranda*, *supra*, 17 Cal.App.4th at p. 1655 ["because this claim was only one of several items of damage pled in the third amended complaint, the trial court erred in granting summary judgment, regardless of the presence or absence of triable issues with respect to the other items of damage asserted by plaintiffs"].)

## DISPOSITION

The judgment is reversed. Costs on appeal to appellant.

_____
Banke, J.

We concur:


_____
Margulies, Acting, P. J.


_____
Dondero, J.