AMERICAN WATER-WORKS COMPANY v. FRANK DOUGHERTY.

FILED JUNE 29, 1893.    No. 4905.

1. **Personal Injuries:** NEGLIGENCE: CONTRIBUTORY NEGLIGENCE: QUESTIONS FOR JURY. Issues as to the existence of negligence and contributory negligence, and as to the proximate cause of an injury, are for the jury to determine, when the evidence as to the facts is conflicting, and where different minds might reasonably draw different inferences as to these questions from the facts established.

2. ———: ELEMENTS OF DAMAGE: MENTAL SUFFERING. In an action for personal injuries, mental suffering and anxiety caused by a physical injury is an element of damage whether or not the injury was due to the willful act of the defendant.

ERROR from the district court of Douglas county.    Tried below before CLARKSON, J.

*John L. Webster*, for plaintiff in error.

*Isaac Adams, contra.*

IRVINE, C.

The defendant in error Frank Dougherty recovered judgment against the plaintiff in error in the sum of $500

for injuries sustained by defendant in error by being thrown into a trench excavated by plaintiff in error in Sherman avenue in the city of Omaha, and alleged to have been left without proper guards or precautions against accident. To reverse this judgment the plaintiff in error brings these proceedings.

The plaintiff in error was operating a system of waterworks in the city of Omaha, and possessed by ordinance the right to occupy streets in that city with its mains, and to make openings and excavations in such streets for the purpose of laying and repairing such mains. A general ordinance of the city in relation to the laying and repairing of water, sewer, and gas pipes provided as follows: "Red lights shall be kept around all unfinished work at night, and fences or other suitable and sufficient barricades against accidents shall be placed around excavations at all times." On the day preceding the accident the plaintiff in error had opened a trench on Sherman avenue running lengthwise of the street, which was north and south, some six or eight feet from the west curb. This trench was from sixteen to twenty feet long, about four feet wide and seven feet deep. About 7 o'clock, and after it had grown dark, Dougherty started from a point on Sherman avenue about a mile north of the excavation, driving two horses attached to a wagon. He was seated upon a board laid across the side boards of the wagon. He started from a saloon, and the evidence shows that he had been there some time, and had partaken of intoxicating beverages, but upon this point it is very doubtful whether the evidence would have been sufficient to have sustained a finding that he was intoxicated. He was accompanied by two men driving one horse attached to a buggy. Dougherty drove down the west side of the street, the two men referred to upon the east side. They were driving at a somewhat rapid rate, and remained so close together that they were enabled to converse as they drove along. When the excavation was

reached, the two men in the buggy being a short distance ahead, Dougherty's horses both plunged into the excavation and Dougherty was thrown either into the trench or upon the ground at the side thereof, sustaining the injuries to recover for which the action was brought.

The principal error assigned is that the verdict is not supported by sufficient evidence, and it is argued upon this assignment in the first place that there is no evidence of negligence on the part of the water-works company causing the accident, and, secondly, that the evidence discloses contributory negligence on the part of Dougherty.

The evidence in regard to the condition of the excavation is conflicting. That introduced on behalf of the company tends to show that when work ceased, about 6 o'clock, the earth removed from the excavation had been piled up along each side and across each end of the ditch to a height varying from one and a half to three feet; that at each end there had been thrust into the loose earth a stick from three to five feet in length, and to the top of each stick was fastened a lantern having a wire guard a short distance from the glass, and a jacket of red flannel drawn tightly over the guard. The evidence on behalf of Dougherty tends to show that when the accident occurred only one red light was visible, and that at the south end of the trench, and that there was no earth, or, if any, a very small quantity across the north end. There is evidence to the effect that Dougherty's horses struck a lantern at the north end, shattering it, and that the fragments were found after the accident. But the two men in the buggy observed but one lantern, and this only when they were within about twenty-five feet of it. As to the existence of the embankment of earth across the north end of the trench the evidence of the defendant's witnesses, Vickery and Dr. Brown, is conflicting and both cannot be believed. The jury was justified in accepting the testimony offered on behalf of Dougherty, and it is in the light of that testi-

mony that the case must be considered.   By the ordi-
nance referred to the company was required to provide
fences or other suitable and sufficient barricades against
accidents.   The term barricade imports an obstruction—
not merely a warning, but an actual impediment to travel.
If the ordinance had only contemplated the throwing out
of the earth necessary in making the excavation, it would
be a useless piece of legislation, for that much of a barri-
cade would be necessarily made.   The general term " suit-
able and sufficient barricade" must also be construed with
reference to the special term " fence," and these considera-
tions lead us to the conclusion that the ordinance contem-
plates a barricade more marked than even the evidence of
the water company shows to have been in existence about
this trench.   As to the lights erected, while the testimony
of the superintendent of the water company is to the effect
that he has seen such lights at the distance of a mile, the
testimony of both Russell and Yubel, the men in the
buggy, is that they saw but one light, and that at the south
end.   Yubel did not see it until he was within about twenty-
five feet of it, while Russell does not seem to have no-
ticed it until after the accident.   The light of a common
lantern passing through a piece of red flannel cannot be
very brilliant, and whether or not it afforded a sufficient
warning was clearly a question for the jury.   We think
the jury was clearly justified in finding that the trench had
been left without proper barricades or cautionary signals,
and we think it was clearly justified in inferring that the
negligence of the company in this regard caused the
accident.

   Much that has already been said applies to the question
of contributory negligence.   We cannot say that the jury
was bound to find that Dougherty was intoxicated; that he
was driving with undue speed, or that in failing to observe
the red light and avoid the trench he failed to use ordinary
care.   There is some general complaint of the instructions

upon these subjects, but when taken together they state the law fairly, and no specific exceptions were taken.

It is assigned as error that the court erred in giving instruction No. 1 asked by Dougherty. This instruction is as follows: "The jury are instructed that the leaving of an excavation in the street without fencing or suitable and sufficient barricades against accident contrary to the provisions of the city ordinance is evidence of negligence. If you shall find that the earth thrown out from the trench on either side did not constitute a suitable and sufficient barricade against accidents, and that the accident occurred through want of a suitable and sufficient barricade while the plaintiff was in the exercise of ordinary care, then you will find for the plaintiff, notwithstanding that you may find that the excavation was at the time guarded by red lights." The first objection urged to this instruction is that its first sentence omits the element of the necessity of proving that the want of a suitable and sufficient barricade contributed to the happening of the accident. The remainder of the instruction states this in clear terms, and is applicable to the evidence. It is also urged that the instruction is erroneous in not telling the jury what would be sufficient and suitable barricades. This point is covered by the second instruction given by the court of its own motion, where the jury is told that it is its duty to inquire whether the company did or did not use such precautions as a person in the exercise of ordinary prudence would have used to warn and protect persons traveling along the streets from the danger to which they might be exposed by reason of the trench. That instruction was at least as favorable to the company as the law would permit. The remaining objections to this instruction seem to rest upon the proposition that the court should have itself determined that the plaintiff was guilty of contributory negligence. This question has already been discussed.

The plaintiff in error also contends that the court erred

in instructing the jury that they might consider mental suffering and anxiety in estimating the damages. This instruction was correct. Owing to the nature of things there can be no precise scale for weighing damages in such cases. Physical suffering caused by such injuries is in its nature inseparable from mental suffering and anxiety from the same cause. Whatever may be the rule as to the recovery of such damages where there has been no physical injury, where such physical injury has been sustained, mental suffering and anxiety are, as much as physical, an element for which the plaintiff should be compensated. Judgment

AFFIRMED.

THE other commissioners concur.