[No. A071386. First Dist., Div. Three. Dec. 26, 1995.]

MACY'S CALIFORNIA, INC., Petitioner, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
CATHERINE JENAE TUSSY-GARBER et al., Real Parties in Interest.

## COUNSEL

Colman, Marcus & Meshot, Peter A. Meshot and Paul A. Pereira for Petitioner.

No appearance for Respondent.

Birnberg & Associates, Cory A. Birnberg and Thomas B. Gill for Real Parties in Interest.

## OPINION

**CHIN, P. J.**—Catherine Jenae Tussy-Garber (Tussy-Garber) allegedly pricked her finger on a hypodermic needle in the pocket of a jacket that had been returned to Macy's California, Inc. (Macy's), by another customer. Tussy-Garber is now suing Macy's for negligence, asserting a right to emotional distress damages because she fears contracting acquired immune deficiency syndrome (AIDS)[1] or another serious or lethal disease. Macy's challenges availability of emotional distress damages for fear of disease

---

[1] We insert here an instructional footnote about AIDS and human immunodeficiency virus (HIV), one probably unnecessary for the contemporary reader. We optimistically anticipate a day when AIDS/HIV is nothing more than a historical footnote. "First isolated and identified by scientists in 1983, HIV is a retrovirus that attacks the human immune system. The virus invades host cells, notably certain lymphocytes, replicates itself, weakens the immune system, and ultimately destroys the body's capacity to ward off disease. [¶] HIV's presence is detected by a laboratory blood test for antibodies to the virus. The virus may reside latently in the body for periods as long as ten years or more, during which time the infected person will

where no physical harm has been shown. We conclude that the superior court erred in concluding that a needle stick, without more, entitled Tussy-Garber to seek emotional distress damages.

### Facts and Procedures

According to her declaration, on February 10, 1993, while trying on a "jean jacket" at a Macy's store in Fairfield, Tussy-Garber placed her hand in one of the pockets and pricked her finger on a hypodermic needle. The pocket contained two hypodermic needles, a knife and a metal pipe possibly used for ingesting cocaine. Tussy-Garber promptly sought hepatitis treatment and testing for the HIV. She admits that she has never tested positive for HIV and would stand only a 1 in 200,000 chance of contracting the virus from the needle if it was contaminated. She concedes that she has had no contact with hepatitis A or hepatitis C and, as of May 1995, had no infection related to hepatitis B. According to Tussy-Garber, Macy's refused to help her find the person who returned the jacket so that she could find out if the person had AIDS and refused to assist her in having the needle tested. She claims also that Macy's refused to pay for treatment required because of the incident.

In response to interrogatories, Tussy-Garber described her emotional injuries: "I can't sleep at night. I have panic attacks. I cry all of the time. I am very sharp with my family. I worry constantly about putting my family through a terrible ordeal and what they may experience by being related to a victim of HIV. I experience nightsweats and nightmares concerning my future and the future of my family. If I dwell on the situation, I throw up. I get very angry about being victimized. I focus on this situation so often that I am unable to give adequate attention to my children. I feel helpless. I went through a period of deep mourning." She also described physical injuries, including aches and pains, diarrhea, uncontrolled weight loss and weight gain, tiredness, rapid aging and tumors on her liver.

On February 8, 1994, Tussy-Garber and her husband filed an action against Macy's for negligence, negligent infliction of emotional distress and loss of consortium. Macy's moved for summary adjudication to bar recovery for emotional distress arising out of Tussy-Garber's fear of contracting AIDS or another infectious disease. For purposes of summary adjudication,

---

manifest no symptoms of illness and function normally. HIV typically spreads via genital fluids or blood transmitted from one person to another through sexual contact, the sharing of needles in intravenous drug use, blood transfusions, infiltration into wounds, or from mother to child during pregnancy or birth. [Citations.] [¶] AIDS, in turn, is the condition that eventually results from an immune system gravely impaired by HIV. . . . AIDS is invariably fatal." (*Faya* v. *Almaraz* (1993) 329 Md. 435 [620 A.2d 327, 328-329].)

Macy's stipulated that Tussy-Garber was actually pricked by a hypodermic syringe as alleged in the complaint. After hearing, the court denied summary adjudication, finding that because Tussy-Garber was "within the area of physical risk and . . . actually sustained a physical impact" she could recover for any proven psychological reactions which "as a matter of reasonable foreseeability, result from the episode as a whole." This petition followed.

### Emotional Distress Damages

■ Although Tussy-Garber has stated two "causes of action" for negligent infliction of emotional distress, negligently causing emotional distress " '. . . is not an independent tort but the tort of *negligence* . . . .' [Citation.] 'The traditional elements of duty, breach of duty, causation, and damages apply. [¶] Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability.' [Citation.]" (*Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588 [257 Cal.Rptr. 98, 770 P.2d 278].)[2]

■ "Damages for serious mental suffering may now be recovered in the absence of either physical injury or impact. [Citation.] This was the holding in *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518], wherein a husband and wife experienced anxiety, suspicion and hostility after the defendant misdiagnosed the wife as having a sexually transmitted disease. The Supreme Court departed from the traditional rule that physical impact or injury is a prerequisite to recovery of emotional distress damages. [Citations.] . . . [¶] In addition . . . requiring intentional wrongdoing or bad faith, has not been considered a prerequisite to recovery by the Supreme Court in negligent infliction of emotional distress claims." (*Pleasant* v. *Celli* (1993) 18 Cal.App.4th 841, 851 [22 Cal.Rptr.2d 663], disapproved on other grounds in *Adams* v. *Paul* (1995) 11 Cal.4th 583, 591, fn. 4 [46 Cal.Rptr.2d 594, 904 P.2d 1205].)

---

[2]Because negligent infliction of emotional distress is not an independent cause of action, a motion to strike or a motion *in limine* to exclude evidence pertaining to emotional distress damages (*Merenda* v. *Superior Court* (1992) 3 Cal.App.4th 1, 6 [4 Cal.Rptr.2d 87] (*Merenda*)) may have been preferable to a motion for summary adjudication, which, if not directed toward a cause of action or issue of duty, arguably is limited to a claim for punitive damages. (Code Civ. Proc., § 437c, subd. (f)(1).) However, because of some ambiguity about whether the motion may be directed toward any "claim for damages," (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1983) ¶ 10:39.5, rev. #1 1995), because availability of emotional distress damages may hinge on whether Macy's owed a duty to Tussy-Garber (*Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 647 [257 Cal.Rptr. 865, 771 P.2d 814]) and because Tussy-Garber did not object to Macy's procedure, we address the merits of the argument.

"To determine liability for negligent infliction of emotional distress in any given case . . . several factors should be considered to ascertain whether the defendant has breached a duty of care. Whether a defendant owes a duty of care is a question of law. [Citations.]" (18 Cal.App.4th at p. 852.) The pertinent factors to consider include those articulated in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 885-886 [2 Cal.Rptr.2d 79, 820 P.2d 181]; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]; *Pleasant* v. *Celli, supra,* 18 Cal.App.4th at p. 852.)

### The Potter Decision

In *Potter* v. *Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965 [25 Cal.Rptr.2d 550, 863 P.2d 795] (*Potter*), the California Supreme Court weighed the policy considerations involved in imposing liability for emotional distress damages for fear of cancer and severely restricted the circumstances justifying such damages. Plaintiffs in *Potter* were landowners living adjacent to a landfill where Firestone disposed of toxic wastes. None of the landowners suffered from cancer or precancerous conditions, but each faced "an enhanced but unquantified risk of developing cancer in the future due to the exposure" because of toxic chemicals in their domestic water wells. (*Id.,* at p. 975.)

Addressing the "negligence: fear of cancer" issue, *Potter* first considered whether parasitic damages were available for emotional distress. "[I]t is settled in California that in ordinary negligence actions for physical injury, recovery for emotional distress caused by that injury is available as an item of parasitic damages. [Citations.] Where a plaintiff can demonstrate a physical injury caused by the defendant's negligence, anxiety specifically due to a reasonable fear of a future harm attributable to the injury may also constitute a proper element of damages. [Citation.]" (6 Cal.4th at p. 981.) *Potter* acknowledged decisions in other jurisdictions allowing parasitic damages for emotional distress engendered by a fear of developing cancer where one plaintiff had been burned by X-ray treatments, another had received a traumatic breast injury and a third was likely to develop sarcoma from a burn

wound. *Potter* also noted a split of authority in other jurisdictions over whether parasitic damages were available where plaintiffs could show immune system impairment and cellular damage. (*Id.,* at pp. 981-983.) Based on its record, however, the *Potter* court could find no physical injury, cellular damage or immune system impairment on which to base parasitic damages. It therefore did not resolve the legal issue of whether such damages would be available. (*Id.,* at pp. 983-984.)

*Potter* next addressed the question of whether the absence of a present physical injury would preclude recovery for emotional distress engendered by fear of cancer. The court reaffirmed the general principle that there is "no duty to avoid negligently causing emotional distress to another, and that damages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff." (6 Cal.4th at p. 984.) *Potter* then rejected a request to impose a requirement of present physical injury, a requirement discarded more than a decade earlier. (*Id.,* at pp. 985-988.) *Potter* did, however, state a requirement that "in the absence of a present physical injury or illness, damages for fear of cancer may be recovered only if the plaintiff pleads and proves that (1) as a result of the defendant's negligent breach of a duty owed to the plaintiff, the plaintiff is exposed to a toxic substance which threatens cancer; *and* (2) the plaintiff's fear stems from a knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that the plaintiff will develop the cancer in the future due to the toxic exposure. Under this rule, a plaintiff must do more than simply establish knowledge of a toxic ingestion or exposure and a significant increased risk of cancer. The plaintiff must further show that based upon reliable medical or scientific opinion, the plaintiff harbors a serious fear that the toxic ingestion or exposure was of such magnitude and proportion as to likely result in the feared cancer." (*Id.,* at p. 997.)

### Extension of Potter to AIDS/HIV

Two California Court of Appeal opinions have applied to fear of AIDS/HIV infection *Potter*'s "more likely than not" requirement, which was developed in the fear of cancer context. In *Herbert* v. *Regents of University of California* (1994) 26 Cal.App.4th 782 [31 Cal.Rptr.2d 709] (*Herbert*), a three-year-old stuck himself with a needle he found on the floor of a medical center room that had been used the previous day for an AIDS clinic. His mother sued as both a direct victim and as a bystander, seeking to recover for her fear that her child would contract AIDS. *Herbert* rejected the mother's attempt to bring her case within *Potter*'s "despicable conduct exception" and her attempt to distinguish dumping toxic wastes in the water supply from leaving contaminated needles where a child could get at them.

*Herbert* affirmed summary judgment in favor of the Regents based upon undisputed evidence that the risk the boy would contract HIV was about one-half of 1 percent, assuming the needle was contaminated. (*Id.,* at pp. 784-788.)

The plaintiff in *Kerins v. Hartley* (1994) 27 Cal.App.4th 1062 [33 Cal.Rptr.2d 172] (*Kerins*), sued medical partnerships and individual partners when, 17 months after her surgery, she learned that her surgeon had tested positive for HIV at around the time of the surgery. *Kerins* first concluded the surgeon had not breached a legal duty to plaintiff either by the manner in which he conducted surgery or by failing to advise her of his HIV seropositivity. The court then assumed, for purposes of argument, breach of a duty to disclose, and addressed the *Potter* more likely than not standard. (*Id.,* at p. 1072.)

*Kerins* examined the *Potter* court's articulated policy concerns: (1) nearly everyone could reasonably fear cancer from exposure to or ingestion of carcinogenic substances. Claims would proliferate absent meaningful restrictions, compromising the availability or insurance for toxic liability risks; (2) unrestricted liability for fear of cancer would diminish availability of new, beneficial prescription drugs or increase their price beyond the reach of those who need them most; (3) recovery by those who fear disease would shift available funds of the defendants and insurers away from those who actually suffer from the diseases; (4) imposing a more likely than not requirement would establish a definite and predictable threshold, leading to more consistent results and early resolution or settlement of claims. *Kerins* concluded that all these concerns applied with equal force in the fear of AIDS context. Applying the more likely than not standard, *Kerins* sustained summary judgment for the defendants. (27 Cal.App.4th at pp. 1073-1074.)

## Contentions

Macy's contends that in order to qualify as a "physical injury" and avoid the more likely than not requirement of *Potter*, the injury must be more than a mere needle stick. In a fear of AIDS/HIV case, plaintiff must either test positive for HIV or exhibit symptoms of the actual onset of the disease. Macy's contends that *Herbert* and *Kerins* recognized this when they applied *Potter* where a boy was scraped by a hypodermic needle and where surgery was performed on a plaintiff. These two courts impliedly found that neither physical invasion constituted the kind of physical injury necessary to bypass the *Potter* requirements.

Macy's also argues that, as a matter of law, Tussy-Garber's fear of AIDS/HIV was unreasonable.

Tussy-Garber insists that neither *Potter, Herbert* nor *Kerins* applies because her needle stick was a direct physical injury. She contends that under well-established negligence law she is entitled to recover for the emotional distress and mental suffering accompanying her physical injury. Neither the *Potter* plaintiffs nor *Kerins* alleged a physical injury and in *Herbert* plaintiff was the mother, not the boy stuck by the needle. Tussy-Garber seeks to distinguish AIDS/HIV from cancer by asserting that we are all exposed to carcinogens every day, whereas AIDS can be avoided "without great effort." She also notes that AIDS is inevitably fatal, while cancer is sometimes curable. She examines the policy considerations noted by the *Potter* court and reaches the opposite conclusion from *Kerins*.

Tussy-Garber contends that the jury should decide whether her fears were reasonable.

### Parasitic Recovery

The issue left open by *Potter* and not specifically addressed by *Herbert* or *Kerins* is what degree of physical injury is required for parasitic recovery of emotional distress damages for fear of disease without plaintiff meeting the strict requirements of *Potter*. Is a mere needle stick enough, as claimed by Tussy-Garber? Is some level of bodily harm, such as symptoms of disease or a positive test for HIV required, as Macy's asserts?

"At the common law the duty to avoid the negligent infliction of mental or emotional distress on others was not generally actionable unless it was accompanied by a physical injury or was parasitic to a recognized cause of action." (*Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600, 606 [208 Cal.Rptr. 899], citing *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 733-739 [69 Cal.Rptr. 72, 441 P.2d 912].) "Initially . . . in negligence cases the right to recover for emotional distress had been limited to circumstances in which the victim was himself injured and emotional distress was a 'parasitic' item of damages, or if a plaintiff who had been in the 'zone of danger' did not suffer injury from impact, but did suffer physical injury as a result of the emotional trauma. [Citations.]" (*Thing* v. *La Chusa, supra,* 48 Cal.3d 644, 651.)

*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], the first decision cited in *Potter*'s discussion of "parasitic recovery," carried emotional distress damages a step further. In *Crisci,* an insurer's refusal to settle caused the insured to lose money and an interest in property and to suffer mental distress. *Crisci* held that the insured could recover for mental distress: "No substantial reason exists to distinguish the cases which

have permitted recovery for mental distress in actions for invasion of property rights. The principal reason for limiting recovery of damages for mental distress is that to permit recovery of such damages would open the door to fictitious claims, to recovery for mere bad manners, and to litigation in the field of trivialities. [Citation.] Obviously, where, as here, the claim is actionable and has resulted in substantial damages apart from those due to mental distress, the danger of fictitious claims is reduced, and we are not concerned with mere bad manners or trivialities but tortious conduct resulting in substantial invasions of clearly protected interests." (*Id.*, at p. 434, fn. omitted.)

By the time of *Merenda*, *supra*, 3 Cal.App.4th 1, *Potter*'s second parasitic recovery citation, the California Supreme Court, in *Molien* v. *Kaiser Foundation Hospitals*, *supra*, 27 Cal.3d 916, had formally "abandoned the rule requiring physical impact or physical injury as a predicate for recovery for emotional distress caused by mere negligence." (*Merenda*, *supra*, at p. 7.) However, in spite of *Crisci*'s broad language, emotional distress damages did not then become recoverable in connection with every established tort. "Where the interest invaded does not naturally entail significant emotional distress, and where precedent has not established the availability of damages for consequential emotional distress, the matter must be resolved as a question of policy." (*Id.*, at p. 8.)

*Merenda* involved emotional distress damages for attorney malpractice. The complaint there alleged that attorney malpractice had caused plaintiff's sexual assault claim to be discharged in bankruptcy. (3 Cal.App.4th at p. 5.) *Merenda* distinguished legal malpractice, where the plaintiff's interest typically is economic, from torts traditionally associated with emotional distress. "Pain and suffering is the natural concomitant of a personal injury. [Citation.] '[I]n the case of many torts, such as assault, battery, false imprisonment, and defamation, mental suffering will frequently constitute the principal element of damages.' [Citations.] *Molien*, *supra*, 27 Cal.3d 916, found sufficient assurance of the validity of a claim of emotional distress in the nature of the cause of action for negligent misdiagnosis, predicated as it was upon a false imputation of syphilis, which by statute constitutes slander per se, an intentional tort. [Citation.] In torts involving extreme and outrageous intentional invasions of mental and emotional tranquillity, the outrageous conduct affords the necessary assurance of the validity of the claim. [Citation.] Recovery also has been sanctioned for emotional distress which could be said naturally to ensue from an act which invaded an interest protected by an established tort. [Citations.] [¶] A close adherence to the precedents

provides the only reliable ground upon which to sanction recovery for emotional distress." (*Merenda, supra*, 3 Cal.App.4th at pp. 8-9.)[3]

Precedent runs against recovery for emotional distress in connection with actions alleging economic damage, such as attorney malpractice actions. Precedent favors recovery, however, in medical malpractice cases and other cases involving personal injuries. (See *Bro* v. *Glaser* (1994) 22 Cal.App.4th 1398, 1420-1431 [27 Cal.Rptr.2d 894], analyzing post-*Molien* decisions.) None of these decisions addressed the issue we face—the threshold for a personal injury which, under *Potter*, would sustain parasitic damages for emotional distress.

*Duarte* v. *Zachariah* (1994) 22 Cal.App.4th 1652, 1661-1663 [28 Cal.Rptr.2d 88], in a different context concluded that personal injury required "harm" in the sense of detrimental physical changes to the body. Evidence in *Duarte* was sufficient to support an inference that bone marrow damage was caused by a mistaken overdose during chemotherapy. (*Id.,* at p. 1655.) *Duarte* considered whether bone marrow injury was actionable regardless of whether it could be shown to have caused a recurrence of cancer. The court concluded that such injury could qualify as "injuring the person" within the meaning of Civil Code section 1708[4] even without an invasion of the legally protected interest in bodily security. "[A] cause of action in negligence requires 'harm' in the sense of detrimental physical changes to the body and we read that to be the meaning of 'injuring the person' in section 1708. [¶] Some causes of action permit recovery of nominal damages, even though no 'harm' has been caused by tortious conduct. However, 'actual damage' in the sense of 'harm' is necessary to a cause of action in negligence; nominal damages are not awarded." (22 Cal.App.4th at pp. 1661-1662.) *Duarte* concluded that damage to the immune system could be considered harm. (*Id.,* at p. 1663.) *Duarte* stated, however, that it meant to imply no view on whether immune system damage would satisfy the *Potter* court's requirement of "personal injury to support parasitic damages for fear of the occurrence of a correlated cancer." (*Id.,* at p. 1663, fn. 6.)

We agree with *Duarte*'s analysis of the requirements for personal injury as the terminology is used in Civil Code section 1708. Actual damage in the

---

[3]In its citations to precedents for recovery for emotional distress, the *Merenda* court mistakenly described *Crisci* as a case of "physical injuries and psychosis resulting from fall through opening." (*Merenda, supra*, 3 Cal.App.4th at p. 9.) It is true that the tenant mentioned in the *Crisci* opinion claimed psychosis from such a fall. However, *Crisci*'s emotional distress ruling addressed the landlord/insured's claim of emotional distress from loss of her property due to the insurer's bad faith refusal to settle. (*Crisci* v. *Security Ins. Co., supra*, 66 Cal.2d at pp. 432-434.)

[4]"Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights." (Civ. Code, § 1708.)

sense of harm or detrimental change to the body is required. Unlike *Duarte*, however, we have occasion also to decide whether this is the meaning *Potter* intended in its discussion of parasitic recovery.[5]

*Potter*'s discussion of parasitic recovery case law conveniently divides into two parts: (1) cases from other jurisdictions involving serious physical injuries, and (2) differing conclusions from other jurisdictions over whether impairment of the immune system response and cellular damage constitute "physical injury."

### (1)  *Serious Physical Injuries*

*Potter* noted that other jurisdictions have allowed parasitic recovery for fear of cancer in connection with serious physical injuries. *Potter* cited three examples: (a) a plaintiff who feared cancer after being negligently burned during X-ray treatments (*Ferrara* v. *Galluchio* (1958) 5 N.Y.2d 16, 21-22 [176 N.Y.S.2d 996, 1000, 152 N.E.2d 249, 71 A.L.R.2d 331]), (b) a plaintiff who, because of traumatic breast injury, feared breast cancer (*Dempsey* v. *Hartley* (E.D.Pa. 1951) 94 F.Supp. 918, 920-921), and (c) a plaintiff who feared sarcoma would ensue from a burn wound (*Alley* v. *Charlotte Pipe & Foundry Co.* (1912) 159 N.C. 327 [74 S.E. 885]). (*Potter*, *supra*, 6 Cal.4th at p. 982.)

Although *Potter* did not specifically approve or adopt the reasoning of these cited authorities, its citation to these three cases strongly suggests agreement with the principle that emotional distress damages may be recovered in connection with serious physical injury.

### (2)  *Impairment of the Immune System and Cellular Damage*

*Potter*'s views about less visible injuries are not as clear. *Potter* concluded that it lacked "an appropriate factual record for resolving whether impairment to the immune response system or cellular damage constitutes a physical injury for which parasitic damages for emotional distress ought to be available." (*Potter*, *supra*, 6 Cal.4th at pp. 984, fn. omitted.) *Potter* referred, however, to a split of authority from other jurisdictions over whether exposure to substances causing such injuries could support emotional distress damages. (*Potter*, *supra*, at pp. 982-983.)

The *Potter* plaintiffs had cited three toxic chemical decisions permitting proof of emotional distress damages, one involving chromosomal breakage

---

[5]*Potter* used the more restrictive term "physical injury" when discussing parasitic recovery. (*Potter*, *supra*, 6 Cal.4th at pp. 981-984.) If personal injury requires detrimental change to the body, it follows, a fortiori, that physical injury requires it too.

and damage to the cardiovascular and immune system (*Werlein* v. *United States* (D.Minn. 1990) 746 F.Supp. 887, 901, 906), another showing subcellular damage to the body's organ systems and ability to fight disease (*Anderson* v. *W.R. Grace & Co.* (D.Mass. 1986) 628 F.Supp. 1219, 1226-1227), and a third claiming injury to the immune system (*Barth* v. *Firestone Tire and Rubber Co.* (N.D.Cal. 1987) 661 F.Supp. 193, 196). They also had cited a decision characterizing as a present physical injury chromosome damage caused by radioactive residues from a uranium milling facility. (*Brafford* v. *Susquehanna Corp.* (D.Colo. 1984) 586 F.Supp. 14, 17-18.)

The *Potter* defendants had cited asbestos exposure decisions, one finding that the pleural thickening and pleural plaques caused by asbestos fibers in the lungs did not constitute physical injury for purposes of parasitic emotional distress damages (*In re Hawaii Federal Asbestos Cases* (D. Hawaii 1990) 734 F.Supp. 1563, 1569-1570), and two others finding that subclinical injuries such as pleural plaques and pleural scarring which do not cause functional impairment were not compensable (*Schweitzer* v. *Consolidated Rail Corp.* (3d Cir. 1985) 758 F.2d 936, 942; *Owens-Illinois* v. *Armstrong* (1991) 87 Md.App. 699 [591 A.2d 544, 560-561].)

Although *Potter* made no attempt to reconcile these two lines of cases, *Duarte* suggested that the *Potter* plaintiffs' cited cases could be distinguished from the asbestos cases on the ground that each of plaintiffs' cases involved proof or allegations of harm to the immune system or other body system, whereas the experts considered pleural changes caused by asbestos fibers to be harmless. (*Duarte* v. *Zachariah*, *supra*, 22 Cal.App.4th at p. 1662, & fn. 5.)

We need not resolve the issues of whether and when subcellular damage constitutes "harm." Both the asbestos decisions and the toxic chemical decisions cited by *Potter* agreed that physical injury for purposes of parasitic emotional distress damages required actual harm. The question before us is whether a routine needle stick constitutes harm for purposes of parasitic damages. We conclude it does not. In a routine needle stick, harm, if it occurs, takes place when a hazardous foreign substance, introduced to the body through the needle, causes detrimental change to the body. Only if the plaintiff proves detrimental change to the body may he or she recover parasitic emotional distress damages. Without such proof, the plaintiff must satisfy *Potter*'s more likely than not test.

Tussy-Garber directs our attention to opinions from other jurisdictions permitting emotional distress damages for fear of AIDS and asks us to distinguish fear of AIDS from fear of cancer, making *Potter* inapplicable.

We see no reason to retill the ground plowed by *Kerins*. In its first incarnation, without benefit of *Potter, Kerins* rejected the approach of several other jurisdictions and followed *Faya* v. *Almaraz, supra,* 329 Md. 435 [620 A.2d 327], which allowed recovery for fear of AIDS during the period after a patient learned of her surgeon's seropositivity and before she received her own negative HIV test results. After the Supreme Court granted review and retransferred the case for reconsideration, *Kerins* reversed itself and held that the *Potter* standards applied to AIDS/HIV and were not met. (*Kerins, supra,* 27 Cal.App.4th at pp. 1066-1067, 1073-1074.) Although we might quibble with *Kerins*'s statement that "[a]ll of the policy concerns expressed in *Potter* apply with equal force in the fear of AIDS context" (*id.,* at p. 1074), we agree that the more likely than not threshold to emotional distress is appropriate for negligent exposure to HIV or AIDS in the absence of physical injury.[6]

## *Conclusion*

The superior court denied summary adjudication because it found that Tussy-Garber was in the "area of physical risk" and it considered the needle stick a "physical impact" sufficient to allow recovery for foreseeable psychological reactions. As discussed above, the issue is not whether the plaintiff was in the area of physical risk or sustained a physical impact. For parasitic recovery of emotional distress damages, plaintiff must have sustained physical injury, meaning detrimental change to the body.

Macy's had the burden of proof on its motion, which it satisfied by presenting evidence that Tussy-Garber never tested positive for HIV, had no contact with hepatitis A or C, and was not infected with hepatitis B, and that the chance of contracting HIV from a needle stick, assuming a contaminated needle, was 1 in approximately 200,000. Tussy-Garber disputed none of Macy's evidence and presented no evidence of other physical harm caused by the needle stick. Based upon the evidence presented, Tussy-Garber could meet neither the *Potter* "more likely than not" test, nor the requirement of a physical injury for purposes of parasitic recovery of emotional distress damages. Only by applying the wrong legal standard could the court have denied Macy's motion.

Let a peremptory writ of mandate issue directing the Solano County Superior Court to vacate its order denying summary adjudication and to

[6]Tussy-Garber is correct that, as far as we know, AIDS is inevitably fatal, whereas cancer is not inevitably so and that HIV is less free in the environment than cancerous substances. However, Tussy-Garber's suggestion that AIDS can be avoided without great effort is overly simplistic. If it means that one not infected in utero may effectively avoid negligent introduction of HIV by avoiding intimate contact, syringes and blood transfusions, it may be correct. If it implies that prophylactics never fail, sexual partners never dissemble and tainted blood never enters the blood supply, it is simply wrong.

enter a new order granting Macy's motion to bar recovery for emotional distress.

Corrigan, J., and Parrilli, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied April 18, 1996. Chin, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.