PENNY M. HARTWIG, APPELLANT, V.
OREGON TRAIL EYE CLINIC ET AL., APPELLEES.
580 N.W.2d 86

Filed June 19, 1998.    No. S-95-1025.

Michael W. Meister, of Meister & Segrist, for appellant.

John K. Sorensen, of Sorensen & Zimmerman, P.C., for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

## INTRODUCTION

Appellant, Penny M. Hartwig, was stuck by two used hypodermic needles that were negligently placed in an ordinary trash receptacle in the medical clinic she was cleaning. Hartwig brought a negligence action against appellees, Oregon Trail Eye Clinic, Dr. Judson C. Martin, and Dr. Thomas J. Roussel (Clinic), seeking to recover damages for, inter alia, the anxiety and mental suffering that resulted from her fear of testing positive for human immunodeficiency virus (HIV) and contracting acquired immunodeficiency syndrome (AIDS) as a result of the Clinic's negligence. The trial court sustained the Clinic's pretrial motion in limine and prohibited Hartwig from presenting evidence to the jury regarding her mental anguish because the court determined that in order to recover damages for mental anguish, Hartwig was required to prove actual exposure to HIV, not merely potential exposure. After the jury returned a $3,000 verdict for Hartwig's physical pain and suffering, Hartwig filed

a motion for new trial. Upon denial of the motion for new trial, Hartwig appealed.

The question presented by this case is whether a plaintiff who sustains a minimal physical injury, such as a needle stick, when such physical injury was caused by the defendant's negligence, may recover damages for anxiety and mental suffering occasioned by the plaintiff's fear of testing HIV positive and contracting AIDS, absent a showing of actual exposure to blood or body fluid infected with HIV. For the reasons that follow, we answer this question in the affirmative, and we accordingly reverse the order of the trial court denying Hartwig's motion for new trial and remand Hartwig's causes of action for a new trial limited solely to the issue of damages.

### FACTUAL BACKGROUND

Hartwig's employer, Merry Maids, entered into an agreement with the Clinic to provide cleaning services for its medical facility. Hartwig was assigned to clean the Clinic on the first night of the contract. In order to collect the Clinic's nonmedical waste, Hartwig carried a large trash bag from room to room, collected the small trash bags from the individual waste receptacles, and placed the small trash bags into the large trash bag. After collecting a few small trash bags, Hartwig picked up the large collector trash bag, and in so doing, it inadvertently swung against her thigh. Hartwig instantly felt a stinging sensation and, looking down, observed a needle protruding from the area of the trash bag that contacted her leg.

Hartwig told a Clinic employee that she had been stuck with a needle disposed of in the nonmedical waste. The Clinic employee treated Hartwig's injury by swabbing the injured area with alcohol and placing a Band-Aid over the puncture. Hartwig said that the Clinic employee then asked her to retrieve the needle from the trash bag. As Hartwig reached into the trash bag to recover the needle, she was stuck by another needle. The Clinic employee treated this injury in the same manner as the other. Hartwig testified that both needle sticks drew a small amount of blood. Hartwig finished cleaning the Clinic that evening without further incident.

Two days later, Hartwig received a telephone call from a registered nurse employed by Regional West Medical Center in the

area of epidemiology and infectious disease control. The nurse had been informed by the Clinic of Hartwig's accident and contacted Hartwig so that they could discuss the risks associated with a needle stick. The nurse told Hartwig that she was at risk for HIV and hepatitis B infection because of the needle sticks. The nurse provided Hartwig with pamphlets and other information concerning additional risks associated with a needle stick, such as the fact that sexual intercourse with her husband would place him at risk of HIV infection and that her children as well as her husband were at risk of infection through exposure to her body fluids.

In order to treat her possible exposure to infectious disease, Hartwig received four different injections over a period of time, vaccinating her against hepatitis and tetanus. Hartwig was also told that she would have to submit to four blood tests to determine whether she had been infected with HIV. The first test was conducted immediately to determine whether Hartwig was HIV positive prior to sustaining her injury at the Clinic. The subsequent tests were to be performed 3 months, 6 months, and 1 year from the time of the accident. A negative test after 3 months indicated a 95-percent probability that Hartwig was not infected with HIV, and a negative test after 6 months indicated a 99½-percent probability that Hartwig was not infected. Ultimately, Hartwig did not test positive for HIV on any occasion.

The Clinic was unable to positively ascertain the identity of the patient or patients upon whom the needles were used. The record is not clear as to why, but it is uncontroverted that the needles which caused Hartwig's injuries were never tested to determine whether they were contaminated with HIV-infected tissue, blood, or body fluid.

Hartwig filed suit against the Clinic to recover damages for her physical injuries consequent to the needle sticks as well as the anxiety and mental suffering resulting from her fear of HIV infection. Assigned to Hartwig was her husband's loss-of-consortium claim. Prior to trial, the district court sustained the Clinic's motion in limine to exclude testimony concerning Hartwig's mental anguish occasioned by her fear that she had indeed been infected with HIV. The court concluded that to

recover such damages, Hartwig would have to prove actual exposure to HIV.

By way of offers of proof at trial, Hartwig offered the deposition testimony of her husband, Roger Hartwig, who, if allowed to testify, would have stated that during the 6-month period after her accident, Hartwig would disappear into a room and cry for hours on end, was impatient with their children, and showed no affection for him or their children. He would also have testified that Hartwig was shunned by their friends because of the friends' irrational fear of HIV infection. Hartwig also offered the deposition testimony of her psychologist, Dr. Charles Howard, who, if allowed to testify, would have told the jury that Hartwig was under extreme stress and anxiety as a result of her fear of contracting AIDS. Howard also would have testified that Hartwig's counseling sessions ceased shortly after her 3-month blood test came back HIV negative, since much of Hartwig's anxiety dissipated with the knowledge that there was a 95-percent probability that she was not infected with HIV. The trial court sustained the Clinic's objection to each of Hartwig's offers of proof.

At the close of the evidence, the trial court sustained Hartwig's motion for a directed verdict as to the Clinic's negligence. However, regarding the issue of damages, the court instructed the jury that it

> may not award any damages to [Hartwig] for anxiety, emotional distress or mental suffering alleged to have been sustained or incurred by her or her husband, Roger Hartwig, as the result of fear of contracting AIDS or fear or anxiety of testing positive for the presence of the HIV virus or other infectious disease.

The jury returned a $3,000 verdict in favor of Hartwig, and judgment was entered accordingly. Hartwig's motion for new trial was overruled, and she timely appealed. Because of the issue presented, we granted Hartwig's petition to bypass and transferred the case to our docket.

## ASSIGNMENTS OF ERROR

Hartwig assigns as error the trial court's (1) refusing to allow Hartwig to present evidence in regard to mental anguish and

emotional distress resulting from her reasonable fear of contracting AIDS caused by the Clinic's negligence; (2) instructing the jury that it could not award damages to Hartwig for anxiety, emotional distress, or mental suffering sustained by her or her husband resulting from her fear of contracting AIDS caused by the Clinic's negligence; and (3) overruling Hartwig's motion for new trial.

## STANDARD OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *J.C. Penney Co. v. Balka, ante* p. 521, 577 N.W.2d 283 (1998); *Martindale v. Weir, ante* p. 517, 577 N.W.2d 287 (1998).

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Wheeler v. Bagley, ante* p. 232, 575 N.W.2d 616 (1998); *Barnett v. Peters, ante* p. 74, 574 N.W.2d 487 (1998).

## ANALYSIS

The question presented in this matter is purely one of law: Whether a plaintiff who sustains a minimal physical injury, caused by the defendant's negligence, may recover damages for anxiety and mental suffering occasioned by his or her fear of testing HIV positive and contracting AIDS, absent a showing of actual exposure to blood or body fluid infected with HIV. We note that in her amended petition, Hartwig pled a cause of action in simple negligence resulting from the Clinic's failure to properly dispose of medical waste, not a cause of action for negligent infliction of emotional distress.

Hartwig argues that Nebraska law has long recognized the basic legal proposition that where mental suffering and anguish accompany a physical bodily injury, such mental suffering and anguish are compensable in damages. The Clinic, for the most part, does not take issue with this basic proposition. However, the Clinic argues that the physical bodily injury must be of sufficient severity, such that it could reasonably be expected to produce mental suffering, and that the mental suffering must directly result from the physical injury.

Hartwig correctly asserts that this court has allowed an injured party to recover damages for anxiety and mental suffering occasioned by a physical injury. See, *Baylor v. Tyrrell*, 177 Neb. 812, 131 N.W.2d 393 (1964), *overruled on other grounds, Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994); *Southwell v. DeBoer*, 163 Neb. 646, 80 N.W.2d 877 (1957); *Omaha Street R. Co. v. Emminger*, 57 Neb. 240, 77 N.W. 675 (1898); *American Water-Works Co. v. Dougherty*, 37 Neb. 373, 55 N.W. 1051 (1893). In *Baylor v. Tyrrell, supra*, we made clear that the longstanding rule in Nebraska is that where a physical injury has been sustained, a plaintiff may recover damages for mental suffering and anxiety reasonably resulting from such physical injury.

However, this rule and our prior cases do not directly address the Clinic's argument. In this regard, the Clinic contends that only a severe injury can reasonably cause anxiety and mental suffering sufficient for compensation. Accordingly, the Clinic asserts that it is only when a plaintiff such as Hartwig is actually exposed to HIV that such plaintiff suffers a severe injury for which it is reasonable to conclude that anxiety and mental anguish are a consequence.

This argument is the basis of the "actual exposure" rule, which the Clinic asserts is the majority rule, having been adopted in 13 jurisdictions. Although the Clinic is correct in claiming that the actual exposure rule is the majority rule, the application of this rule has not been as widespread as the Clinic suggests—particularly when one considers the wide variety of factual contexts in which the "fear-of-AIDS" question has been presented.

The vast majority of the fear-of-AIDS cases have been pled as negligent infliction of emotional distress claims. Only a handful of cases have been tried on the theory presented in the instant appeal—as parasitic damages consequent to a physical injury. See, *Marchica v. Long Island R. Co.*, 31 F.3d 1197 (2d Cir. 1994); *Macy's Cal., Inc. v. Superior Court*, 41 Cal. App. 4th 744, 48 Cal. Rptr. 2d 496 (1995); *Russaw v. Martin*, 221 Ga. App. 683, 472 S.E.2d 508 (1996); *Castro v. New York Life Ins. Co.*, 153 Misc. 2d 1, 588 N.Y.S.2d 695 (1991). "Parasitic damages" are described as damages occasioned by anxiety specifi-

cally due to a reasonable fear of a future harm attributable to a physical injury caused by the defendant's negligence. See *Potter v. Firestone Tire and Rubber Co.*, 6 Cal. 4th 965, 863 P.2d 795, 25 Cal. Rptr. 2d 550 (1993). Nonetheless, although not directly on point, the fear-of-AIDS cases pled as negligent infliction of emotional distress causes are useful in regard to an analysis and application of the actual exposure rule advocated by the Clinic.

For the most part, those jurisdictions that have required an actual exposure to HIV as a prerequisite to recovery for mental distress damages do so in order to objectively quantify the reasonableness of a plaintiff's fear of contracting AIDS. See *Russaw v. Martin*, 221 Ga. App. at 686, 472 S.E.2d at 512 (stating that "[t]o allow recovery for emotional injuries and mental anguish, without any proof whatsoever that [plaintiff] was actually exposed to HIV or hepatitis is per se unreasonable").

In order for one to have an actual exposure to HIV, there is a necessary confluence of two factors. First, there must be an exposure to tissue, blood, or body fluid infected with HIV, and second, the exposure to the infected tissue, blood, or body fluid must be by way of a channel of communication or transmission deemed medically or scientifically sufficient to cause an HIV infection. When both factors are capable of proof or disproof, the actual exposure rule functions as a viable means through which the reasonableness of a plaintiff's fear of AIDS may be objectively tested.

For example, it is certainly reasonable to fear AIDS if one has been exposed via a medically recognized channel of transmission to blood known to be HIV positive. See *Johnson v. W.Va. University Hospitals*, 186 W. Va. 648, 413 S.E.2d 889 (1991). Conversely, it is unreasonable to fear AIDS when one is exposed to HIV-positive blood or body fluid by means other than a medically recognized channel of transmission, see *Funeral Serv. by Gregory v. Bluefield Hosp.*, 186 W. Va. 424, 413 S.E.2d 79 (1991), *overruled on other grounds, Courtney v. Courtney*, 190 W. Va. 126, 437 S.E.2d 436 (1993), or when, although exposed by a medically recognized channel of transmission, the blood or body fluid is not HIV positive, see *Russaw v. Martin, supra.*

Many of the cases cited by the Clinic in support of the actual exposure rule involve this sort of factual context, that is, cases in which HIV exposure and a medically sufficient channel of transmission were capable of proof or disproof. Cases where no sufficient channel of transmission was identified include *Barrett v. Danbury Hospital*, 232 Conn. 242, 654 A.2d 748 (1995); *K.A.C. v. Benson*, 527 N.W.2d 553 (Minn. 1995); *Ordway v. County of Suffolk*, 154 Misc. 2d 269, 583 N.Y.S.2d 1014 (1992); and *Funeral Serv. by Gregory v. Bluefield Hosp., supra*. Cases where the exposure was to uninfected tissue, blood, or body fluid include *Russaw v. Martin, supra*; *Kaufman v. Physical Measurements Inc.*, 207 A.D.2d 595, 615 N.Y.S.2d 508 (1994). Cases where there was no allegation of exposure to infected blood and such was capable of proof include *Neal v. Neal*, 125 Idaho 617, 873 P.2d 871 (1994); *Doe v. Surgicare of Joliet, Inc.*, 268 Ill. App. 3d 793, 643 N.E.2d 1200 (1994); *Hare v. State*, 173 A.D.2d 523, 570 N.Y.S.2d 125 (1991); *Doe v. Doe*, 136 Misc. 2d 1015, 519 N.Y.S.2d 595 (1987); and *Seimon v. Becton Dickinson & Co.*, 91 Ohio App. 3d 323, 632 N.E.2d 603 (1993). A case where there was actual exposure to contaminated blood through a medically sufficient channel of transmission and recovery was allowed is *Johnson v. W.Va. University Hospitals, supra*.

Application of the actual exposure rule in such cases is inapposite to the case at bar for the reason that it is not unreasonable to fear HIV infection or AIDS when one such as Hartwig is exposed via a medically sufficient channel of transmission to the tissue, blood, or body fluid of another and it is impossible or impracticable to ascertain whether that tissue, blood, or body fluid is in fact HIV positive. When this narrower factual issue is examined, the actual exposure rule is neither the majority rule nor persuasive in the context of the instant case.

The Clinic cited three cases in which courts have required that a plaintiff must suffer an actual exposure to HIV-infected blood or body fluid as a prerequisite for recovery of emotional damages notwithstanding the fact that it was impossible or impracticable to ascertain whether the suspected infectious agent was contaminated.

In *Burk v. Sage Products, Inc.*, 747 F. Supp. 285 (E.D. Pa. 1990), the district court concluded that under Pennsylvania law, a plaintiff may recover for injuries stemming from a fear of contracting an illness after exposure but not for injuries arising from a mere fear of initial exposure. In addition, the court observed that it was extremely unlikely that one who tests HIV negative 6 months after exposure will ever become infected and that the plaintiff tested HIV negative on five occasions during the 1-year period after he was allegedly stuck by the needle. The court stated that it was "reluctant to allow someone to recover for fear of contracting a disease after it has become substantially likely that he will not develop the illness." *Id.* at 288.

In *Macy's Cal., Inc. v. Superior Court*, 41 Cal. App. 4th 744, 48 Cal. Rptr. 2d 496 (1995), the California Court of Appeals held that an ordinary needle stick does not give rise to parasitic damages for emotional distress and mental suffering unless a hazardous foreign substance is introduced into the body through the needle and causes detrimental changes to the body. Absent such detrimental change, in order to recover damages for a fear of contracting an illness, the plaintiff's fear must result from knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that the plaintiff will develop such illness in the future due to the exposure.

In *Carroll v. Sisters of Saint Francis*, 868 S.W.2d 585 (Tenn. 1993), the Tennessee Supreme Court held that actual exposure to HIV is a prerequisite to recovery of emotional damages based on the fear of contracting AIDS. The court reasoned that because the law has been reticent to allow juries to award damages based only on mental or emotional trauma, due to the inherent subjective nature of these claims, the actual exposure rule functions as an objective measure necessary to test the authenticity of a plaintiff's fear-of-AIDS claim.

The logical flaw running through this line of cases is the failure of these courts to recognize the fact that modern medicine treats a *potential exposure* to HIV virtually the same as it treats an *actual exposure* to HIV. When a person such as Hartwig is *potentially* exposed to HIV through a medically viable channel of transmission, the applicable standard of medical care requires that such person conduct his or her life as if they were

*actually* exposed to HIV-positive tissue, blood, or body fluid until such a time that a blood test reveals, to a certain statistical level of confidence, that such person is HIV negative.

We think it inconsistent to suggest that during the period of time in which such person is required by competent medical advice to conduct his or her life as though he or she were HIV infected, the law would conclude that it is unreasonable, speculative, fanciful, or whimsical for such person to have a real and intense fear that he or she is HIV positive and may suffer a slow, agonizing death from AIDS. The cases requiring an actual exposure when such is incapable of proof fail to give deference to the fact that from the time of exposure until after successive blood tests indicate that such a person is HIV negative, the genuineness of that person's mental anguish resulting from a fear of AIDS is medically beyond dispute.

Those cases which reject the actual exposure rule do so because the courts are cognizant of the medical realities associated with HIV infection. In *Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327 (1993), an HIV-positive oncological surgeon was sued by two former patients. Both plaintiffs found out about their surgeon's condition from a newspaper article published more than a year after their surgeries. Each patient immediately underwent blood tests to discover whether she was HIV positive. Both tested HIV negative.

In their lawsuit, the plaintiffs sought to recover damages for their fear of contracting AIDS. The trial court dismissed the complaints for failing to allege a legally compensable injury. The Maryland Court of Appeals reversed. After discussing the medical realities of HIV infection and the relevant fear-of-AIDS case law, the court held:

> In the instant case, we cannot say that appellants' alleged fear of acquiring AIDS was initially unreasonable as a matter of law, even though the averments of the complaints did not identify any actual channel of transmission of the AIDS virus. But *Burk's* requirement that plaintiffs must allege actual transmission would unfairly punish them for lacking the requisite information to do so.
>
> Appellants' *continued* fear of contracting AIDS may, however, be unreasonable after they tested HIV-negative

upon learning of Dr. Almaraz's illness, which was well over a year after their last contacts with the physician. . . . Once appellants learned of their HIV-negative status more than a year after their respective surgeries, the possibility of their contracting AIDS from Dr. Almaraz became extremely unlikely and thus, as a matter of law, might be deemed unreasonable. Therefore, appellants may only recover for their fear and its physical manifestations which may have resulted from Almaraz's alleged negligence for the period constituting their reasonable window of anxiety—the period between which they learned of Almaraz's illness and received their HIV-negative results.

(Emphasis in original.) *Id.* at 455-56, 620 A.2d at 336-37.

In considering a Federal Employers' Liability Act (FELA) claim, the court in *Marchica v. Long Island R. Co.*, 31 F.3d 1197 (2d Cir. 1994), rejected application of the actual exposure rule where the plaintiff suffered a precipitating physical injury. In this case, the claimant was stuck by a discarded hypodermic needle with blood in the syringe when he attempted to extinguish a smoldering pile of debris lying at the bottom of a shaftway. The railroad disposed of the syringe as a matter of policy before the blood could be sampled for testing.

After examining the developing fear-of-AIDS case law, the court concluded that the actual exposure rule is simply a means of ensuring the genuineness of the claim. Recognizing that FELA provides for a broader recovery than may be obtained pursuant to common-law negligence, the court held that "a FELA plaintiff who has suffered a physical impact may recover for a fear of developing AIDS if the impact caused by the defendant's negligence occurred under circumstances that would cause a reasonable person to develop a fear of AIDS." *Id.* at 1206.

In *Castro v. New York Life Ins. Co.*, 153 Misc. 2d 1, 588 N.Y.S.2d 695 (1991), the plaintiff, an employee of a cleaning contractor, was stuck in the thumb by a used hypodermic needle negligently disposed of by the defendant. The defendant sought summary judgment, claiming that a cause of action may not be maintained solely on the basis of a risk or fear of developing AIDS in the future absent evidence that evinces a suffi-

cient degree of probability that the disease will manifest itself—in other words, absent actual exposure.

In denying the defendant's motion, the trial court concluded that for a plaintiff to recover for mental anguish arising from a fear of AIDS, he or she must prove that the condition suffered was a direct result of the defendant's breach of a duty and that the breach was the proximate cause of the mental anguish.

> Prospective consequences must be expected to flow with reasonable certainty from the harm. [Citation omitted.] An unfounded fear that some harm will result in the future is not compensable [citations omitted].
>
> If a claim can be tied to a distinct event which could cause a reasonable person to develop a fear of contracting a disease like AIDS, there is a guarantee of genuineness of the claim. It is only where the causal connection between the original injury and the ultimate damage may be said to be too tenuous that an original wrongdoer will be freed from liability for the ultimate damage.
>
> . . . .
>
> The overwhelming consensus of medical opinion is clear: the HIV virus is not spread casually. Rather, it has specific and well-known modes of transmission . . . .
>
> . . . .
>
> Here, Castro's claim for mental anguish and "AIDS Phobia" is directly tied to the date on which she allegedly received the hypodermic puncture to her right thumb. Given the massive informational campaign waged by federal, state and local health officials over the last few years in an effort to educate the public about this dreadful disease, any reasonable person exposed to this information who is stuck by a used and discarded hypodermic needle and syringe from which blood was apparently drawn could develop a fear of contracting AIDS . . . .

*Id.* at 5-6, 588 N.Y.S.2d at 697-98. See, also, *Madrid v. Lincoln County Medical Center*, 122 N.M. 269, 278, 923 P.2d 1154, 1163 (1996) (stating that "[s]ound public policy supports recognition of a cause of action for emotional-distress damages in favor of one who fears that the negligence of another has

caused him or her to contract HIV through a medically sound channel of transmission").

Nebraska law provides that in order to succeed in an action based on negligence, a plaintiff must establish the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation, and damages. *Ratigan v. K.D.L., Inc.*, 253 Neb. 640, 573 N.W.2d 739 (1998); *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997). As noted earlier, where a physical injury has been sustained, a plaintiff may recover damages for mental suffering and anxiety reasonably resulting from such physical injury. *Baylor v. Tyrrell*, 177 Neb. 812, 131 N.W.2d 393 (1964). In particular, foreseeability that affects proximate cause relates to the question whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff reasonably flowed from the defendant's alleged breach of duty. *Sacco v. Carothers, supra.* We cannot say, as a matter of law, that one's fear of testing HIV positive and contracting AIDS is unreasonable when one suffers an injury in a manner by which medical science has concluded that HIV could be communicated.

We recognize that application of the actual exposure rule in instances where both a medically viable channel of transmission and the nature of the suspected infectious agent are capable of proof or disproof offers an objective measure of reasonableness and genuineness in regard to one's claim of a fear of contracting AIDS. However, application of the actual exposure rule is antithetical to the goal of objective quantification of the reasonableness and genuineness of one's claimed fear of AIDS in circumstances where (1) the identity of the patient upon whom the contaminated needle or instrument was used is unknown and (2) it is impossible or impracticable to prove or disprove that the suspect tissue, blood, or body fluid was in fact HIV positive, even though the injury occurred via a medically sufficient channel of transmission.

We therefore hold that a plaintiff may adduce proof and potentially recover damages for the mental anguish of reasonably fearing AIDS resulting from a physical injury when the plaintiff may have been exposed, via a medically sufficient channel of transmission, to the tissue, blood, or body fluid of another in circumstances where the identity of the patient upon

whom the contaminated needle or instrument was used is unknown, and when it is impossible or impracticable to ascertain whether any such tissue, blood, or body fluid may be HIV positive. There is no reason in law, policy, or fact why Hartwig should not be allowed the opportunity to prove to a jury that, at least for a certain "window of anxiety," her fear of HIV infection and contracting AIDS was reasonable and genuine and that it resulted in mental suffering occasioned by a physical injury for which she may receive compensation. The applicable "window of anxiety" in fear-of-AIDS cases is the period from the time of possible exposure to that point when a plaintiff knows or should know that he or she is not infected with HIV. See *Williamson v. Waldman*, 150 N.J. 232, 696 A.2d 14 (1997).

In the instant case, the trial court determined as a matter of law that Hartwig's physical injury was caused by the Clinic's negligence. There is also the convergence of three factors which are requisite to our holding: (1) Hartwig was potentially exposed to tissue, blood, or body fluid of other unidentified persons by being stuck by discarded hypodermic needles; (2) it was impossible or impracticable to determine whether the needles were in fact contaminated with HIV-positive blood; and (3) needle sticks are a medically sufficient channel of transmission of HIV. After the needle sticks, Hartwig was told by a medical professional to conduct her life as if she were HIV positive until a series of blood tests indicated that she was not HIV positive. The lack of severity of Hartwig's physical injury bears no relationship whatsoever to the reasonableness or genuineness of her fear of HIV infection or of contracting AIDS. Instead, the medical realities of HIV infection required Hartwig to act as though she were HIV positive until medical evidence told her that she could resume her normal life.

For the foregoing reasons, we conclude that the trial court erred in sustaining the Clinic's motion in limine and in excluding testimony concerning Hartwig's mental anguish occasioned by her fear that she had been infected with HIV. Thus, the trial court abused its discretion when it denied Hartwig's motion for new trial. We note that the Clinic did not appeal the trial court's determination of its negligence as a matter of law; therefore, the issue of the Clinic's negligence need not be retried.

## CONCLUSION

As a result, we reverse the order of the trial court denying Hartwig's motion for new trial and remand Hartwig's causes of action, including her husband's assigned loss-of-consortium cause of action, for a new trial limited solely to the issue of damages.

REVERSED AND REMANDED FOR A NEW TRIAL
ON THE ISSUE OF DAMAGES.