Filed 8/26/13  Peck v. Verdi Trails West CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sierra)

|  |  |
|---|---|
| CORRINE PECK, | C067935 |
| Plaintiff and Appellant, | (Super. Ct. No. 7044) |
| v. | |
| VERDI TRAILS WEST, INC., | |
| Defendant and Respondent. | |

Plaintiff Corrine Peck appeals from the judgment entered after the trial court granted the summary judgment motion of defendant Verdi Trails West, Inc. (Verdi Trails).  Peck fell off her horse during a trail ride after her foot came out of the stirrup and the saddle slipped to the side.  Peck appeals the judgment as to her causes of action for gross negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.  She does not appeal her claim for ordinary negligence, which claim the trial court found she expressly waived when she signed a release and waiver of liability agreement.

Peck claims the trial court erred in making the factual determination that the trail guide was not grossly negligent for talking on her cell phone during the guided ride and

1

for failing to help Peck when she started to fall off the horse. Peck claims the trial court improperly considered the cell phone records for the phone the guide was using, because they were hearsay evidence. Peck also claims the trial court erred in granting summary judgment on her negligent and intentional infliction of emotional distress causes of action.

We shall conclude that the undisputed facts were sufficient for the trial court to determine that any negligence on the part of defendant's employee did not amount to gross negligence, and that because Peck did not object to the admission of the phone records below, she may not challenge the trial court's ruling on that ground.

We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 2007, Peck fell off a horse while on a guided horseback trail ride operated by Verdi Trails. Peck was participating in the ride with her husband, daughter-in-law and two grandchildren. Prior to the trail ride, Peck signed a liability waiver and release agreement, as well as a statement refusing protective headgear.

The trail guide for Peck and her party was Tamara Avera. Avera had been riding horses for approximately 40 years, and had been the ranch manager at Verdi Trails for approximately five years, during which time she had served as guide on 60 to 150 trail rides each month that rides were offered. Avera cinched the horses' saddles, including the saddle of Peck's horse, before the group left the corral. Avera also instructed the group on stopping and turning the horses before the ride started. While the group was still in the corral area, Avera noticed that Peck's body was tilted to the left, and instructed her how to correct her position.

The trail was relatively flat, and the group proceeded in a single file with Avera at the front and Peck near the rear. Approximately 20 minutes into the ride, Peck's right foot fell out of the stirrup and she was unable to get it back in. When her foot fell out of the stirrup, Peck began waving to get Avera's attention. She waved with her left arm

2

because when Avera would turn around, she turned to the left, and Peck did not think she could get Avera's attention by waving with her right arm. Peck did not call out to Avera because she did not want to spook the horse.

Peck continued to slip to the left for approximately 20 minutes before she fell off. She continued to try to get Avera's attention by waving to her, but was unable to get her attention. Peck's husband watched her try to get Avera's attention for 20 minutes after her foot slipped out of the stirrup, Peck's husband stated that Avera was on her cell phone for the entire 20 minutes and was not paying attention to his wife. Peck also told her daughter-in-law that her foot was out of the stirrup and that she could not get the guide's attention. Neither the husband nor the daughter-in-law told Avera about Peck's situation.

Avera stated that she was not on her cell phone when the ride began, but that her boss called her during the ride to ask if everything were okay. She did not talk to him very long. The cell phone she was using was not her phone, but was a business telephone, and her boss had the telephone records.

The record does not reflect what time of day the incident occurred. Verdi Trails provided the cell phone records for the phone Avera used during the trail ride. From 7:03 a.m. to 7:04 p.m. on July 3, 2007, there were a total of 17 calls made and received. The records showed that 10 of these calls lasted one minute or less. Four calls lasted between one and two minutes. Two calls lasted between two and three minutes. One call lasted between five and six minutes. During no 20-minute period on July 3, 2007, was the phone used the entire 20-minute period. The most minutes the phone was used during any one 20-minute period was six minutes, attributable to a single phone call at 11:50 a.m.

Peck claimed that after she fell, it took Avera five minutes to come over, and that Avera grabbed her arm, yanked her up, and said, "You are not hurt. Get up and get back on that horse." Peck claimed she told Avera that she was hurt, and to leave her alone. Avera claimed she dismounted her horse and went to Peck's side immediately when she

3

saw her fall off the horse. Avera claimed she told Peck to catch her breath before she tried to get up. When Peck indicated she was ready to get up, Avera said she helped her up.

A saddle can move on a horse, or slide to the side, depending on the rider's position, even if the saddle is properly cinched.

Peck's Judicial Council form complaint alleged causes of action for negligence, gross negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. The cause of action for gross negligence alleged that defendant was grossly negligent in allowing Peck to ride while defendant's agent was operating a cell phone and riding so far ahead of Peck that the agent was unable to help Peck when her horse began to run uncontrollably, and that this caused Peck to fall off her horse.

The cause of action for intentional infliction of emotional distress alleged that she suffered severe emotional distress "when she paid a fee to ride the horse and the Defendants [*sic*] recklessness caused Plaintiff to fall of [*sic*] her horse and suffer severe emotional distress." The cause of action for negligent infliction of emotional distress alleged that defendant's negligent acts caused physical injuries that "manifested into suffering severe emotional distress." Peck does not appeal the adjudication of her first cause of action alleging negligence.

DISCUSSION

I

Gross Negligence

Gross negligence is defined as either: (1) "a ' " 'want of even scant care' " ' or [(2)] ' " 'an extreme departure from the ordinary standard of conduct.' " ' [Citations.]" (*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 754 (*City of Santa Barbara*).) A claim of gross negligence requires extreme conduct on the part of the defendant. (*Rosencrans v. Dover Images, Ltd.* (2011) 192 Cal.App.4th 1072, 1082.) While a waiver and release agreement relating to recreational activities, such as the

4

plaintiff signed in this case, is effective as to ordinary negligence, it is unenforceable as a matter of public policy as to gross negligence. (*City of Santa Barbara, supra,* at pp. 750-751.)

Whether a defendant's lack of care constitutes gross negligence is usually, but not always, a triable issue of fact. (*City of Santa Barbara, supra*, 41 Cal.4th at p. 767.) The Supreme Court has emphasized "the importance of maintaining a distinction between ordinary and gross negligence, and of granting summary judgment on the basis of that distinction in appropriate circumstances." (*Ibid*.) This case presents such an appropriate circumstance.

It is undisputed that Verdi Trails was not grossly negligent for " ' " 'want of even scant care.' " ' " (*City of Santa Barbara, supra,* 41 Cal. 4th at p. 754.) Verdi Trails provided Peck with an experienced guide who instructed the riders on the basics of turning and stopping. The guide even instructed Peck how to right herself in the saddle, which apparently was the problem that led to her fall.

Because Verdi Trails was not grossly negligent for want of *any* care, Peck's claim of gross negligence must be based on her claim that there was " ' " 'an extreme departure from the ordinary standard of conduct.' " ' " (*City of Santa Barbara, supra,* 41 Cal. 4th at p. 754.) Peck's cause of action for gross negligence alleged only two facts that could be the basis for the claim: (1) that the guide rode so far ahead of the group that she was unable to help when Peck began to fall off of her horse, and (2) that the guide was on her cell phone during the ride.

As to the first claim, Peck presented no evidence that the guide was riding too far ahead of her to be of any assistance, and she cannot rely on the allegations of her own pleadings to make an evidentiary showing in opposition to a summary judgment motion. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720, fn. 7.) In any event, Peck admitted in her deposition that when her foot came out of the stirrup, she tried to wave to the guide, but she did not say anything to her. Neither did any of her family.

5

Peck refrained from calling out not because the guide was too far away to hear, but because Peck did not want to spook her horse. Thus, the guide's distance from the party made no difference in this case. Since no one ever informed the guide that Peck was having trouble, the guide could have been right in front of Peck and not known there was trouble with Peck's stirrup.

As to the second claim, Peck's husband submitted a declaration stating that his wife tried for approximately 20 minutes to get the attention of the guide, and that the guide was not paying attention and was talking on her cell phone the entire 20 minutes. Avera admitted that she was on her cell phone for a brief period of time. Therefore it is undisputed that she was on the phone for some period of time during the ride. Verdi Trails submitted its phone records for the phone Avera was using. As indicated, the record indicates there was no 20-minute block of time that the cell phone was in use the entire day.

Peck claims the trial court erred in taking the phone records into consideration because the attorney to whose declaration the records were attached had no personal knowledge of how long the guide was on the phone. However, this court considers all the evidence set forth in the moving and opposition papers unless an objection to the evidence was made and sustained. (*Guz v. Bechtel National Inc*. (2000) 24 Cal.4th 317, 334.) Peck made no objection below to the phone records. Failure to object to the moving party's evidence waives the right to challenge the court's ruling based on such evidence. (Code Civ. Proc., §437c (b)(5), (d).)

Peck further argues that the trial court improperly weighed the evidence when it considered the cell phone records against Peck's husband's declaration that Avera had been on the phone the entire 20 minutes, and concluded that the phone records verified Avera's testimony that she used the cell phone for only a brief period. However, even assuming Avera was on the phone the entire 20 minutes prior to Peck's fall, such conduct would not be grossly negligent. Under these facts it would not have mattered whether

6

Avera was on her phone, because she was never told that Peck was having problems. Peck admitted in her deposition that she never did anything to get Avera's attention other than wave to her. She tried to wave because Avera would turn around, and she was trying to get Avera's attention that way. She did not try to call out to Avera. She did, however, tell her daughter-in-law that her foot was out of the stirrup, but the daughter-in-law did not call out to Avera. Peck's husband saw that she was having trouble and needed help, yet for 20 minutes he watched but did not try to get Avera's attention either.

Extreme conduct, and an extreme departure from the conduct of care is required to make a showing of gross negligence, and such a showing cannot be made here. By Peck's own admission, Avera instructed her on how to stop her horse and how to correct her mount when she slipped to the left. Avera, who was at the front of the line, periodically turned to look back. Even assuming Avera was on her cell phone during the time Peck was having trouble, there is no evidence Avera was ever informed by anyone in the party that Peck was having a problem, or that having been so informed, Avera simply ignored Peck. While gross negligence does not require intentional, wanton, or reckless misconduct, it does require extreme conduct that goes beyond the failure to exercise reasonable care. (*City of Santa Barbara, supra*, 41 Cal.4th at pp. 753-754.) The mere failure to notice a problem over a 20-minute period during a trail ride over a relatively flat trail was no more than ordinary negligence absent notification of a problem.

II

Intentional Infliction of Emotional Distress

Peck's complaint alleged that Verdi Trails intentionally inflicted emotional distress on her by "operating a horseback riding ranch in such a reckless manner that it had a high probability of causing [Peck] severe emotional distress . . . ." To succeed on a claim of intentional infliction of emotional distress, plaintiff must show that defendant's conduct was so outrageous that it exceeded all bounds and that it was not the type of

7

conduct usually tolerated in a civilized society.  (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051.)  Defendant must have acted with the intent to cause, or with reckless disregard of the probability of causing emotional distress.  (*Id*. at p. 1050.)  Defendant must have intended to inflict injury or engaged in the conduct with the realization that injury would result.  (*Id*. at p. 1051.)

Peck again argues that the trial court improperly relied on the cell phone records, which she claims were hearsay.  As indicated, any hearsay objection to the evidence was waived when she failed to raise the objection below.

In any event, the trial court correctly stated that at a minimum Peck would have had to show that the guide was aware that Peck was in trouble and deliberately ignored her to establish a cause of action for intentional infliction of emotional distress.  No such facts were established, and the trial court correctly granted summary judgment on this cause of action.

III

Negligent Infliction of Emotional Distress

Peck's claim of negligent infliction of emotional distress fails because the liability release she signed releases Verdi Trails from any liability for ordinary negligence.  As the trial court stated, negligent infliction of emotional distress in not an independent tort but is the tort of negligence.  (*Macy's California, Inc. v. Superior Court* (1995) 41 Cal.App.4th 744, 748.)  The trial court properly granted summary judgment as to Peck's first cause of action for negligence based upon the release agreement, which she has not appealed.  The cause of action for negligent infliction of emotional distress is no different with respect to the express waiver and release.

8

DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

                                                                       BLEASE             , Acting P. J.

We concur:

   ROBIE              , J.

   MURRAY          , J.